A.T. v S.T. (2025 NY Slip Op 50701(U))

[*1]

A.T. v S.T.

2025 NY Slip Op 50701(U)

Decided on April 29, 2025

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 29, 2025
Supreme Court, Westchester County

A.T., Plaintiff,

against
S.T., Defendant.

Index No. XXXXX

Plaintiff — Christopher W. McClure, Esq., The Law Firm of William G. Sayegh, P.C., 65 Gleneida Avenue, Carmel, New York 10512
Defendant — Self-Represented

James L. Hyer, J.

The following Decision and Order is being entered following a hearing before the undersigned held on April 25, 2025.
 Relevant Background, Procedural History
On April 3, 2025, this matrimonial action was commenced with the filing of a summons and complaint (hereinafter "Complaint") (NYSCEF Doc. No. 1), which asserts that the parties were married on November 10, 1988, seeking the entry of a judgment of divorce dissolving the parties' marriage based upon the irretrievable breakdown of the parties' relationship for a period in excess of six months, in addition to other ancillary relief.
On April 16, 2025, a request for judicial intervention (NYSCEF Doc. No. 7) was filed with a motion (hereinafter "Motion Sequence No. 1") (NYSCEF Doc. Nos. 2-6), seeking the entry of an order granting the following relief: (1) exclusive use and possession of the marital residence located at XXXX (hereinafter "Marital Domicile") pending the final determination of the above-captioned action for divorce, pursuant to Domestic Relations Law Section 234; (2) exclusive use and possession of the contents of the marital residence pending the final determination of the above-captioned action for divorce, pursuant to Domestic Relations Law Section 234; (3) an Order of Protection, pursuant to Domestic Relations Law Section 240, directing that the Defendant refrain from all abusive, violent or offensive conduct toward the Plaintiff; and that Defendant remain away from the marital residence; and (4) together with such other and further relief as to this Court may seem just and proper.
In support of the relief requested, Plaintiff submitted an affidavit in support wherein she argued that the relief is warranted due the domestic violence that she has endured by Defendant, asserting:
"Defendant has severely and repeatedly inflicted physical abuse upon me throughout the course of our marriage. Defendant has, among countless other incidents, slapped, punched, and otherwise physically assaulted me over the course of our marriage. On one occasion, Defendant hit me hard enough that I developed a black eye. On one occasion, I traveled to Delhi, India, and met with Defendant, where Defendant hit my head so severely that I considered going to the emergency room. On this occasion, Defendant also threatened to lock me in his apartment and leave me without access to food and water.[FN1]
* * *
Defendant is returning to the United States on Thursday, April 17, 2025, at 2 p.m. (see Exhibit 1- ticket confirmation). I am fearful for my life when he returns to the marital residence. Defendant has committed acts of violence against me before and is capable of doing so again. As such, I am requesting that I have exclusive use and occupancy of the martial residence immediately.[FN2]
* * *
I am also requesting an Order of Protection in my favor that Defendant refrain from all abusive, violent or offensive conduct towards me and that Defendant remain away from the marital residence."[FN3]
Motion Sequence No. 1. was conformed (NYSCEF Doc. No. 9) directing: (1) that all of the ex parte interim relief was denied; (2) that Plaintiff serve Defendant with Motion Sequence No. 1 via e-mail by April 16, 2025; (3) that the return date be 4:00 p.m. on April 17, 2025, wherein all parties and counsel were directed to appear prepared to engage in oral argument as to the relief sought.
On April 16, 2025, Plaintiff's counsel filed proof of service of Motion Sequence No. 1 on Defendant pursuant to the directives of the Court (NYSECF Doc. No. 10).
On April 17, 2025, this case was called at which time appearances were made by Plaintiff, Plaintiff's counsel and Defendant failed to appear or to request an adjournment of the conference. Oral argument was received pertaining to the relief sought in the instant application. Following oral argument, a Decision and Order (hereinafter "Decision") (NYSCEF Doc. No. 12) was entered directing the following:
"Based upon the foregoing, it is hereby
ORDERED that Motion Sequence No. 1 is granted to the extent that the interim relief requested therein is granted to the extent set forth herein; and it is further
ORDERED that unless a fully executed Stipulation is submitted by the parties pertaining [*2]to the interim relief sought in Motion Sequence No. 1 by April 24, 2025, a hearing shall be held as to the interim relief commencing on April 25, 2025, at 9:00 a.m. continuing to 5:00 p.m., and continuing day-to-day thereafter until completion; and it is further
ORDERED that a temporary order of protection shall be entered immediately following the entry of this Decision and Order; and it is further
ORDERED that Plaintiff's counsel shall serve via e-mail this Decision and Order with Notice of Entry on Defendant, along with a copy of the Temporary Order of Protection, by April 17, 2025, and shall file an Affidavit of Service by that date; and it is further
ORDERED that Plaintiff's counsel shall serve via e-mail or facsimile a copy of the Temporary Order of Protection, by April 17, 2025, on the New York State Police, Westchester County Police and Mt. Pleasant Police Department, and shall file an Affidavit of Service by that date; and it is further
ORDERED that Plaintiff's counsel shall order a copy of the Court Transcript from today's appearance, shall pay the entire cost of same, and shall submit same to be so ordered by May 17, 2025; and it is further
ORDERED that to the extent any relief sought has not been granted, it is expressly denied."
A temporary order of protection was then entered conforming with the determinations made in the aforementioned Decision (hereinafter "Temporary Order of Protection") ("NYSCEF Doc. No. 13).
On April 18, 2025, Plaintiff's counsel filed proof of service on Defendant of the Decision, Temporary Order of Protection, Summons and Complaint (NYSCEF Doc. No. 15).

Hearing
On April 25, 2025, a hearing was held wherein appearances were made by Plaintiff, Plaintiff's counsel and Defendant as a self-represented litigant. A so ordered transcript for the hearing was filed (hereinafter "Transcript") (NYSCEF Doc. No. 26).
- Notice of Right to Counsel or To Proceed As Self-Represented Litigant
Following being sworn in, Defendant provided the Court with his e-mail address being: XXXX (hereinafter "Defendant's E-Mail") and his telephone number being: XXXX (hereinafter "Defendant's Telephone Number").[FN4]

Defendant was advised of his right to proceed as a self-represented litigant or with counsel, advised that an appointed 18-B counsel would be made available in the event he was determined to be indigent and if the nature of the case warranted such relief, and was advised of his right to seek the appointment of pro bono counsel through application made to the Supervising Matrimonial Judge of the Nineth Judicial District.[FN5]
The Court then inquired as to Defendant's finances and Defendant was unable to provide his estimated income for the past year, after which the Court determined Defendant not to be credible, and declined to make a [*3]determination that he was indigent and to appoint counsel.[FN6]
The Court then presented Defendant with two documents marked and filed as court exhibits being: (1) Self-Represented Litigant Information Sheet (NYSCEF Doc. No. 18); and (2) Part Rules of the Hon. James L. Hyer, J.S.C. (NYSCEF Doc. No. 19).[FN7]

- Plaintiff's Application For Alternate Service
The Court then advised the parties the reason for the court appearance:
"THE COURT: So the reason why we're here is that Plaintiff commenced a matrimonial action against Defendant and simultaneously filed a motion seeking interim relief. The Court determined that due to the existence of exigent circumstances, that certain relief would be granted without a hearing, but pursuant to Second Department case law***I am required to schedule a hearing forthwith which is what I have done and that's scheduled to take place today. I will note that the pro se litigant submitted a letter to the Court filed as NYSCEF Document Number 16 dated April 22, 2025, wherein a series of issues are raised, including that he was not served pursuant to CPLR 308 as he was not served in hand. I'm going to deal with that first."[FN8]
Defendant asserted that he was not served personally and requested proper service as per the CPLR.[FN9]
Plaintiff's counsel then made an application for alternate service:
"MR. McCLURE: Judge, I do. Judge, I do have an application for alternate service for a couple of reasons. He was out of the country, but even when he was in the country, my information from the Mount Pleasant PD, they went to the house multiple times because he was actually at the house last Friday and Saturday and tried to effect service. I did provide them with a Summons & Complaint, the Order from the Court, the Order of Protection and the notice to be here today and he would not answer the door, so my application is for alternate service. My understanding is he moved to a motel in Orangeburg, I don't know any room number, but he has received on multiple occasions from me personally an e-mail with the Summons & Complaint which, frankly, he actually acknowledged that he received the e-mail, otherwise, he wouldn't have known, so I have an application for alternate service to serve him. I actually have an extra copy today in court. I can provide him with the Summons & Complaint, the notice of electronic filing, but my application is under the CPLR to be able to file by e-mail service."[FN10]
The Court then granted Plaintiff's application for alternate service to be made upon Defendant via e-mail, directed that it be made during the break, and advised the parties that the case would be recalled later that morning after e-mail service was effectuated so that the Court could proceed with a preliminary conference and hearing as directed in the Decision.[FN11]

During the recess, Plaintiff's counsel filed proof of service on Defendant, via e-mail to Defendant's E-Mail, of the Decision, Temporary Order of Protection, Court Notice, Summons, Verified Complaint, and Motion Sequence No. 1 (NYSCEF Doc. No. 20).[FN12]

- Defendant's Failure to Appear When Case Recalled
Following the recess, the Court recalled the case and was advised that Defendant was not present and efforts were made by Plaintiff's counsel to reach him at Defendant's Telephone Number:
"THE COURT: Recalling the case of A.T. v. S.T. Appearances remain the same with the exception of the Defendant who is not here. I will note that the court officers called this case and I have Plaintiff's counsel and Plaintiff in front of me. Plaintiff's counsel, where is S.T.?
MR. McCLURE: Judge, I'm not sure. The last time I believe I saw him, we were standing — A.T. was standing by the elevators, he went towards the elevators. While I can't say I saw him actually get in the elevator, he's not there anymore and I haven't seen him since.
THE COURT: Do you have a phone number that you can reach him? He just put one on the record.
MR. McCLURE: Yes, we have.
THE COURT: I'm going to ask that you try to call him on the record and we will go from there.[FN13]
* * *
MR. McCLURE: I'm going to call Defendant's Telephone Number.
THE COURT: Thank you.
MR. McCLURE: It's ringing. Voice mail. S.T., good morning. This is Attorney Chris McClure calling. We are up in Judge Hyer's part. He has recalled the case. You need to come back up to the Court appearance ASAP. Thank you. Judge, for the record, I dialed that number. No answer. It went to voice mail. I did leave a voice mail saying that it was me calling and that I was in your part and that you had recalled the case and he needs to come up as soon as possible."[FN14]
The Court then advised Plaintiff and Plaintiff's counsel that another recess would be provided to afford Defendant additional time to appear, and if he failed to appear by the next call of the case, the hearing would proceed in his absence.[FN15]
When the case was recalled, at approximately 10:25 a.m., Defendant failed to appear, and the hearing proceeded.[FN16]

- Plaintiff's Testimony
At the hearing, Plaintiff was the only witness who provided testimony. She testified that the parties had married in 1988 in the country of India and share one adult child.[FN17]
When asked about her employment, Plaintiff testified that she is a physician and assistant professor of medicine at XXXX, having been a medical doctor for twenty-eight years.[FN18]
When asked about Defendant's employment, she testified that his last position was as a consultant with XXXX, which concluded in 2021 or 2022.[FN19]
She testified that she resides at the Marital Domicile with Defendant.[FN20]
However, she testified that over the past several years Defendant has left the Marital Domicile for long periods of time providing her with little information about his whereabouts including two to three months in 2022, seven months in 2023 and six months in 2024.[FN21]

When asked about his absences in the years 2022 and 2023, Plaintiff provided the following testimony:
"Q In 2022, when he left to go out of the country, do you know where he went?
A He went to India.
Q And how do you know he went to India?
A Because he was in contact with me, he was letting me know where he is.
Q Was that something that the two of you discussed and agreed to that he would go to India, how did it come about that he left?
A He said he had to take care of his retirement accounts there and his bank accounts and stuff like that, but in 2023, he went for almost seven months and he did not exactly tell me he was — his whereabouts, but he did tell me when he was done, that he went for a month to the Philippines and then he decided that he wants to move permanently to Philippines and he wants to marry a young girl there and move there permanently and I don't know why I accepted him back, but in 2024, he left again for six months and I don't know where he was, where he went, but I have an idea that he was there for three months and for one month in Bangkok because of my phone bills, I could see where he was."[FN22]
With respect to the parties' finances, Plaintiff testified that while the Marital Domicile was purchased with marital funds during the parties' marriage and her name was to be added to the deed, Defendant's name is the only name on the Deed as her name was never added.[FN23]
When asked about assets in India, she testified that the parties had assets in the country that were in the parties' joint names that have recently been transferred into Defendant's sole name.[FN24]
Plaintiff further testified that she discovered Defendant had withdrawn two million dollars from investment accounts in November of 2024 without her knowledge and consent.[FN25]

When asked if the Defendant had ever physically put his hands on her, Plaintiff responded that he had done so many times, and that Defendant has been randomly abusive because of his anger issues.[FN26]
Plaintiff described one incident where she had visited India following the death of her mother:
"When I went there, we had an argument and he just went off and he punched me, kicked me. He just kicked me in the head so many times that I almost felt that I had a bleed in my head and I was ready to go to the ER and then I was staying with a friend who is a doctor, I told her to observe me and if something happens, to bring me to the ER and luckily, I was okay.
Q Did you have any physical injuries, bruises or scrapes or anything as a result of that?
A Yes.
Q What kind of injuries did you have?
A I had many bruises, you know.
Q Where were the bruises, on your body?
A Just all over, arms, legs."[FN27]
When asked if Defendant had ever given her a black eye, she responded that he did so on more than one occasion, and Plaintiff's Exhibit 1 was admitted into evidence being a photo depicting Plaintiff with a black eye (NYSCEF Doc. No. 22). Plaintiff described one such incident when Defendant gave her a black eye:
"A Yes, and then the second time, I was a resident and then we had gone, you know, to L.A. to visit my sister and in the car, he wanted me to tell him directions and I was bad at reading maps, so he just hit me and, you know, just punched me in the eye, like he was seating in the driver's seat, I'm in the passenger seat, he just went like that and just, you know, I got a black eye."[FN28]
She testified that she is fearful of Defendant, as she knows that when a victim is trying to leave an abuser, that is the time when they become most violent,[FN29]
and asserted:
"I cannot predict when he would just become angry and violent and so, I'm always, like, walking on eggshells around him, so, you know, I felt these last six months, I have been peaceful and I have been living alone, but now, when I started imagining that he's coming back, I was again very disturbed and fearful that he's going to come and, again, become physical which is not a pleasant feeling."[FN30]
When asked how she felt when in the same house as Defendant, she responded:
"Fearful, afraid of triggering him for something that he will again become violent and, you know, because most of the times, he starts yelling and, you know, just goes off and I try not to engage with him. Most of the times, I go stay in my corner of the house and, you know -[FN31]
Following Plaintiff testimony, Plaintiff's counsel provided a closing statement and the Court noted that a written decision would be entered.

Legal Analysis

1. Witness Credibility.
Determinations of credibility depend in large part on the court's assessments of the character, temperament, and sincerity of the parties, the trial court's determination should be [*4]accorded deference, and its determination should not be disturbed unless it lacks a sound and substantial basis in the record (Sanchez v. Rexhepi, 30 N.Y.S.3d 170 [2d Dept 2016]). "In matters of this character 'the findings of the nisi prius court must be accorded the greatest respect'" (Eschbach v. Eschbach, 56 NY2d 167 [1982], quoting, Matter of Irene O., 381 N.Y.S.2d 865 [1975]).
"The memory, motive, mental capacity, accuracy of observation and statement, truthfulness and other tests of the reliability of witnesses can be passed upon with greater safety by a trial judge who sees and hears the witnesses than by appellate judges who simply read the printed record" (Barnet v. Cannizzaro, 3 AD2d 745 [2d Dept 1957]).
Here, the Court determines that Plaintiff was a credible witness, after having observed Plaintiff during the hearing responding clearly to all of the questions presented to her in a responsive manner. The Court further determines Defendant not to be a credible witness to the extent that he provided information to the Court during the appearance. While Defendant provided no testimony during the hearing, having failed to reappear following the recess despite the directives of this Court, Defendant was asked to provide his income for the past year and was evasive in his response unable to provide even an approximate amount.
2. Request for the entry of a temporary order of protection against Defendant, in favor of Plaintiff.
"It is well established that the party seeking an order of protection has the burden of establishing by a preponderance of the evidence that the party for which the order is seeking to restrain has committed the alleged family offense, and whether a family offense has been committed is a factual issue to be resolved by the court, and its determinations regarding the credibility of witnesses are entitled to great weight" (Susan WW, On Behalf of Karri-Ann WW. v. Alan WW., 161 AD3d 1249, 1250 [3d Dept 2018]; Richardson v. Richardson, 80 AD3d 32 [2d Dept 2010]; see also Family Court Act § 812).
Here, Plaintiff alleged that Defendant committed a family offense arising out of harassment in the second degree.
Pertaining to harassment in the second degree, under Penal Law § 240.26:
"A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or
2. He or she follows a person in or about a public place or places; or
3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."
The Courts have held that intent required for a finding of family offense of harassment in the second degree may be inferred from surrounding circumstances and even a single incident is legally sufficient to support a finding that respondent committed a family offense (Richardson v. Brown, 173 AD3d 875 [2d Dept 2019]).
Based upon the submissions filed with the Court, the testimony and evidence received by the Court at hearing, and the lack of any efforts made by Defendant to refute the allegations made against him despite having had the opportunity to do so, this Court determines that Plaintiff has met the burden necessary to prove that Defendant committed a family offense [*5]against Plaintiff by having engaged in harassment in the second degree against Plaintiff to warrant the entry of an order of protection against Defendant in favor of Plaintiff as requested.
To effectuate this provision, an order of protection shall be entered immediately following the entry of this Decision and Order, and provided to the parties in Court, to remain in effect until April 29, 2026, directing that Defendant shall:
a. Remain away Plaintiff at all times; and
b. Stay away from the Marital Domicile; and
c. Stay away from the business, and place of work of Plaintiff; and
d. Refrain from communication or any other contact by mail, telephone, e-mail, voicemail, social media or other electronic means with Plaintiff including through third parties; and
e. Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Plaintiff; and
f. Refrain from remotely controlling any connected devices affecting the Marital Domicile, vehicle or property of Plaintiff; and
g. Surrender, by April 30, 2025, to the XXXX Police Department all firearms in the possession of the Defendant, in addition to any pistol permits.
3. Request for the entry of an order granting Plaintiff temporary exclusive use and occupancy of the Marital Domicile.
The Appellate Division Second Department has provided guidance with respect to when a trial court may grant a party exclusive use and occupancy of a marital domicile during a matrimonial proceeding, providing:
"Courts are statutorily empowered to award one spouse temporary exclusive use and occupancy of the marital residence during the pendency of divorce proceedings (see Domestic Relations Law § 234). Such an order is appropriate only upon a showing that the relief is necessary to protect the safety of persons or property, or one spouse has voluntarily established an alternative residence and a return would cause domestic strife (see e.g. Taub v. Taub, 33 AD3d 612, 822 N.Y.S.2d 154). In light of the defendant's voluntary establishment of an alternative residence for herself and the existence of an acrimonious relationship between the parties, we agree with the Supreme Court's determination granting that branch of the plaintiff's motion which was for temporary exclusive use and occupancy of the marital residence and denying that branch of the defendant's cross motion which was for temporary exclusive use and occupancy of the marital residence (see Amato v. Amato, 133 AD3d 695, 696, 21 N.Y.S.3d 104)."
(Goldman v. Amramova-Goldman, 185 AD3d 1012 [2d Dept 2020]).
While an award of exclusive occupancy generally requires the Court to hold a hearing before making such a determination, such an award may be made without a hearing upon the determination that persuasive evidence exists that such an award is necessary to protect the safety of persons and property (Formato v. Formato, 173 AD2d 274 [1st Dept 1991]).
Plaintiff credibly testified at the hearing that she is seeking exclusive occupancy of the Marital Domicile as Defendant has engaged in domestic violence against her financially, physically and emotionally. Plaintiff's testimony further included that when Defendant is present in the parties' home, she is uncomfortable due to his anger issues.
Based upon the submissions filed with the Court, the testimony and evidence received by the Court at hearing, and the lack of any efforts made by Defendant to refute the allegations made against him despite having had the opportunity to do so, this Court determines that persuasive evidence exists that an award of exclusive occupancy of the Marital Domicile to Plaintiff is necessary to protect the safety of persons and property. In making this determination, the Court has taken into consideration Defendant's access to at least two million dollars, that he had withdrawn from the parties' joint accounts, providing him with more than adequate resources to establish an alternate residence outside of the Marital Domicile.
Accordingly, Plaintiff is awarded exclusive use and occupancy of the Marital Domicile along with the contents therein, and Defendant is hereby directed to remain at least five hundred feet from such property.
4. Other Relief.
To the extent any other relief has been requested and not granted or otherwise addressed herein it is hereby denied.
Based upon the foregoing, it is hereby
ORDERED that Motion Sequence No. 1 is granted to the extent set forth herein; and it is further
ORDERED that an order of protection shall be entered immediately following the entry of this Decision and Order; and it is further
ORDERED that Plaintiff's counsel shall serve, via e-mail to Defendant's E-Mail Address, this Decision and Order with Notice of Entry on Defendant, along with a copy of the Order of Protection, by April 30, 2025, and shall file an Affidavit of Service by that date; and it is further
ORDERED that Plaintiff's counsel shall serve via e-mail or facsimile a copy of the Order of Protection, by April 30, 2025, on the New York State Police, Westchester County Police and Mt. Pleasant Police Department, and shall file an Affidavit of Service by that date; and it is further
ORDERED that to the extent any relief sought has not been granted, it is expressly denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: April 29, 2025
White Plains, New York
ENTER:
HON. JAMES L. HYER, J.S.C.

Footnotes

Footnote 1:See, NYSCEF Doc. No. 3, Plaintiff's Affidavit ¶ 7-11.

Footnote 2:See, NYSCEF Doc. No. 3, Plaintiff's Affidavit ¶ 15-18.

Footnote 3:See, NYSCEF Doc. No. 3, Plaintiff's Affidavit ¶ 21.

Footnote 4:See, Transcript Pg. 2:23.

Footnote 5:See, Transcript Pg. 2:11-25; 3:1-22.

Footnote 6:See, Transcript Pg. 3:21-25, 4:1-22.

Footnote 7:See, Transcript Pg. 5:3-24.

Footnote 8:See, Transcript Pg. 9:14-21, 10:4-13.

Footnote 9:See, Transcript Pg. 11:8-9.

Footnote 10:See, Transcript Pg. 11:12-25, Pg. 12:1-13.

Footnote 11:See, Transcript Pg. 12:24-25, Pg. 13:1-25, Pg. 14:1-19; see also, CPLR § 308(5); Rae v. Marciano, 227 AD3d 738 [2d Dept 2024], a court is authorized to permit alternate service by e-mail following a showing that personal service could not be effectuated despite efforts made with due diligence. Here, following an application made by Plaintiff and both parties having been afforded the opportunity to engage in oral argument as to this application, the Court determined that Plaintiff demonstrated that personal service could not be effectuated on Defendant via personal service and that alternate service via e-mail was appropriate as Defendant confirmed Defendant's E-Mail Address and had appeared in Court having been provided with notice of the scheduled hearing confirming his access to Defendant's E-Mail Address.

Footnote 12:NYSCEF notes that this document was filed at 9:55 a.m. by Plaintiff's counsel, shortly following the Court's first recess.

Footnote 13:See, Transcript Pg. 18:3-22.

Footnote 14:See, Transcript Pg. 19:11-24.

Footnote 15:See, Transcript Pg. 20:7-8.

Footnote 16:See, Transcript Pg. 21:7-11.

Footnote 17:See, Transcript Pg. 22:10-19.

Footnote 18:See, Transcript Pg. 23:3-11.

Footnote 19:See, Transcript Pg. 30:6-10.

Footnote 20:See, Transcript Pg. 22:20-21; 23:12-17.

Footnote 21:See, Transcript Pg. 25:14-23.

Footnote 22:See, Transcript Pg. 25:24-25; 26:1-22.

Footnote 23:See, Transcript Pg. 24:8-23.

Footnote 24:See, Transcript Pg. 19-25; Pg. 29:1-5.

Footnote 25:See, Transcript Pg. 11-25; 31:1-24.

Footnote 26:See, Transcript Pg. 34:2-4; 35:6-13.

Footnote 27:See, Transcript Pg. 34:15-25; 35:1-5.

Footnote 28:See, Transcript Pg. 36:2-9.

Footnote 29:See, Transcript Pg. 38:20-24

Footnote 30:See, Transcript Pg. 39:10-17.

Footnote 31:See, Transcript Pg. 40:2-7.